## SHELLMAN BANKING COMPANY *v.* OLIVER.

No. 10887.   FEBRUARY 19, 1936.   REHEARING DENIED MARCH 20, 1936.

*Olin Hammock,* for plaintiff.

*M. C. Edwards* and *Tom P. Edwards,* for defendant.

RUSSELL, Chief Justice. W. J. Oliver died on September 17, 1930, leaving a widow, two daughters, Mrs. Leila Watson and Mrs. Dixie Watson, and a son, J. T. Oliver. As appears from the will of W. J. Oliver, he was possessed of a large amount of property. For several years and until his death he was president of the Shellman Banking Company and the owner of a large number of shares of its capital stock. In his will he devised this stock to his wife for life, with the right to draw all the dividends, and after her death the stock was to be divided between his two daughters. No bank stock was devised to J. T. Oliver, the defendant in error. The widow, the two daughters, their husbands, and T. R. Arthur, a friend of the testator, were named as executors. J. T. Oliver was not empowered with any part in the administration of his father's estate. While only certain excerpts from the will were introduced in evidence on the trial, a copy of the will was attached to the answer of the defendant, from which it appears that the executors could sell the property of the estate at private sale, and could borrow money for the estate, and were not required to give bond

or make any return of their acts and doings. This will was presented for probate on January 5, 1931. J. T. Oliver filed a caveat, which he withdrew upon being placed in possession of the tract of land which had been devised to him by the will. He went into possession, and was delivered the rent note for the year 1931 which had previously been taken by one of the executors, but it was payable to J. T. Oliver. After the death of the testator and before the probate of the will, T. R. Arthur was elected president of the Shellman Banking Company, and so continued until the bank was placed in the hands of the superintendent of banks on January 12, 1932. H. R. Watson was a director of the bank during the lifetime of his father-in-law, and he so continued until the bank closed. On January 17, 1931, the directors of the bank declared and paid a dividend of eight per cent. on its capital stock. On April 18, 1932, the superintendent of banks issued against "the estate of W. J. Oliver, now in the hands or that may hereafter come into the hands of H. R. Watson, R. T. Watson, T. R. Arthur, and Mesdames W. J. Oliver, Leila Watson, and Dixie Watson, as executors of said W. J. Oliver, deceased," a fi. fa. which was levied on the land devised to J. T. Oliver and of which he had been placed in possession by the executors. He interposed a claim. A petition in aid of this levy was filed. J. T. Oliver filed an answer in which, among other things, he alleged that the executors, who were charged with the custody and control of the bank stock, had given no notice, as required by law, of the change of ownership resulting from the devise of the entire holding of stock to the widow for life, with remainder to the two daughters; but that in violation of law the executors had left the stock on the books of the bank as the property of W. J. Oliver, well knowing that the stock was not his, but had been devised as stated above; and that at the time of the testator's death he owned other property which was far more than sufficient to pay his debts. The defendant (claimant) asked that the equitable petition be consolidated and tried with the claim case. This was done. The plaintiff filed demurrers to the answer. The court overruled them, and exceptions pendente lite were filed. The trial resulted in a finding in favor of the defendant. The plaintiff's motion for new trial was overruled; and exception was taken. Error was assigned also on the ruling excepted to pendente lite.

The answer of the defendant, if proved as alleged, entitled him to avoid the levy and prevent a sale thereunder as sought by the plaintiff in fi. fa. Considering the petition and the demurrers together, as we should, and construing both with strictness adverse to the pleader, no point is made in the demurrer which would authorize the court to dismiss the answer. Even the demurrers which alleged certain statements in the answer to be irrelevant to the issue would permit proof of facts which would tend to strengthen and corroborate one of the main and controlling issues in the case, to wit, whether the superintendent of banks was authorized to issue the fi. fa. at all in the form and at the time it was issued; and other allegations of the answer which are alleged to be irrelevant bear directly upon the question as to the solvency of the estate of W. J. Oliver at the time the defendant took possession of the land levied on. The court did not err in overruling the demurrers.

Two facts were established by the evidence: (1) The bank was solvent at the time of death of W. J. Oliver. (2) It was solvent at the date the executors assented to the legacy to J. T. Oliver. In these circumstances an assessment against the estate on this bank stock could not be enforced against the land bequeathed to J. T. Oliver, as the title to it had passed into him by the assent of the executors to the legacy. The ruling on the demurrers to the answer did not affect the result either for or against the Shellman Banking Company, because it did not permit the introduction of any evidence or bring about the rejection of any evidence which could have changed the final result established by the facts to which we have just been referred, and which were sufficiently established by the evidence.

We come next to consider the merits of the motion for new trial. There is no dispute as to the fact that the bank was solvent at the time the testator died; and while the executor who testified was an evasive and unwilling witness, the facts to which he testified left no conflict as to the assent to the legacy devised to J. T. Oliver. There was a conflict in the testimony as to whether the testator was solvent at the time of his death. It can not be said as a matter of law that the testimony for either party preponderates over that of the other. There was testimony that before his death the testator executed to his two daughters deeds to property admitted to be of great value, one being a tract of over 1100 acres of the finest

farming land, and the other conveying about 800 acres, and that each of the daughters procured a loan of $10,000, which was paid to the testator; but there was no writing in evidence as to this money being paid to W. J. Oliver, and no evidence that the value of the property at the time the deeds were executed was not in excess of the amount the lender was willing to advance upon it. There was evidence that the testator at the time of his death was in possession of much valuable property other than that which he deeded to his daughters and from which he is alleged to have received $20,000. In the circumstances the jury were authorized to believe the testimony in behalf of the plaintiff in fi. fa., but there is no rule of law which requires a jury to believe all or any part of the testimony of every witness sworn in a case; more especially in this case, where the stock at the time of the testator's death was presumably sufficient to pay the indebtedness; for the jury had before them evidence of the fact that some months after the death of the testator the bank was able to pay a dividend of eight per cent. on its shares of stock.

In the motion for new trial are three assignments of error on the charge of the court to the jury. The second and third assignments of error are considered together, as they relate to the same subject and concern the same complaint. The first assignment of error is based on the refusal of a request to give in charge to the jury the following: "In the instant case, therefore, if the executors of the estate of W. J. Oliver did not cause any transfer of the stock standing in the name of W. J. Oliver to be entered upon the books of the bank, and did not give to the bank in question written notice of the transfer of said stock, the superintendent of banks of the State of Georgia properly issued execution against the funds and assets of the estate of W. J. Oliver in the hands of his executors." The court did not give this instruction as requested, but it was sufficiently and more clearly covered by the following charge: "The statute prescribes two ways, gentlemen, by which a former holder of stock in an insolvent bank in the hands of the State Banking Department may or might have avoided his liability upon an assessment of stock standing in his name upon the books of the bank, to wit, firstly, by causing the transfer of the stock to be entered upon the books of the bank; and secondly, by giving the bank written notice of the transfer. If neither of these acts were per-

formed by any such stockholder, he is liable under the stock assessment issued by the superintendent of banks; and knowledge of the transfer upon the part of officials of the bank will not avail him to defeat his liability under the law."

The second assignment of error is that the court erred in charging the jury "that the only issue in this case is whether or not the property in question is subject to the execution." The third is on the following charge: "Should you find in favor of the plaintiff, the form of the verdict would be, we, the jury, find the property subject. Should you find in favor of the defendant, the form of your verdict would be, we, the jury, find the property not subject." The instructions just quoted closely followed each other. In the circumstances we approve the instructions of the court. Stripping the case of all immaterial considerations, the only real question is whether the property of J. T. Oliver is subject to the levy of the fi. fa. The proceeding instituted by the plaintiff was a petition in equity; and under the evidence the chancellor would have been authorized to submit to the jury the single question whether the property was subject to the fi. fa., or not subject, and upon that one finding of fact to have entered the decree of the court. The exclusion of ancillary issues which might have been suggested in the pleadings or by the evidence was not error. The court did not err in overruling the motion for a new trial.

*Judgment affirmed. All the Justices concur.*